MONRAE L. ENGLISH (SBN 237163)
WILD, CARTER & TIPTON
246 West Shaw Avenue
Fresno, California  93704
Telephone:  (559) 224-2131
Facsimile:  (559) 224-8462
menglish@wctlaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CARMEN MELONE,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>PAUL EVERT'S RV COUNTRY; A California Corporation,<br><br>　　　　　　　　　　　　Defendant. | Case No. 2:08-cv-868-BES-GWF<br><br>MEMORADUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION AS A MATTER OF LAW<br><br>Date:<br>Time:<br>Dept:<br><br>Trial Date:　　July 19, 2010 |

## I. LAW AND ARGUMENT

### A.　Standard In Granting a JMOL

Before a case is submitted to the jury, a party may move for judgment as a matter of law on the ground that there is no legally sufficient evidence to support the opposing party's claim or defense. [FRCP 50(a)]  (Formerly known as a motion for directed verdict.)

If the motion is denied, and the jury verdict is adverse to the moving party, that party may renew its request for judgment as a matter of law after entry of judgment [FRCP 50(b)]

Like a pre-verdict JMOL motion under Rule 50(a), a post verdict motion under Rule 50(b) challenges the sufficiency of the evidence to support plaintiff's case or defendant's defense. Judgment as a matter of law is proper only if "the evidence, together with all reasonably inference in favor of the verdict, could lead a reasonable person to only one conclusion, namely, that the moving party was entitled to judgment." *White v. Ford Motor Co.* (9th Cir. 2002) 312 F3d 998.

**PAUL EVERT'S RV COUNTRY** requested this judgment prior to the case being submitted to the jury, under FRCP 50(a) and therefore, renews his request for judgment as a matter of law after entry of judgment under FRCP 50(b).

In the present case, **PAUL EVERT'S RV COUNTRY** requests a judgment as a matter of law on the ground that there is no legally sufficient evidence to support **CARMEN MELONE's** claim that he had a recognized disability under the ADA and in addition, failed to show that any physical condition substantially limited one or more of his major life activities.

B.  **Uncontested Facts In The Case**

In the present case, it is not disputed that plaintiff underwent surgical procedures related to prostate cancer and was off work beginning December 12, 2006. Plaintiff returned to work on January 15, 2007 on his own accord, without limitations from himself or his treating physicians. ( Reporter's transcript dated July 20, 2010, 49:-4-25) (Attached to the Declaration of Monrae L. English  as Exhibit "B")  It is further undisputed that Plaintiff was terminated from his employment on or around March 16, 2007.

As such, the pertinent timeframe to query whether Plaintiff had a recognized disability which substantially limited a one or more major activities under the ADA should be limited from January 15, 2007 until March 15, 2007.

C. **There Is A Complete Absence of Evidence Supporting the Verdict And There is An Overwhelming Amount of Evidence In Favor Of Paul Evert's RV Country Confirming That Reasonable and Fair Minded Persons Could Not Arrive At a Verdict Against It.**

   1. *Plaintiff Did Not Have A Recognized Disability Under The ADA*

The first element of the ADA claim that **CARMEN MELONE** must prove is that he had a physical or mental impairment. (See Jury Instruction #15). (Declaration of Monrae L. English, Exhibit 'C')

In this case, the term disability and physical or mental impairment would include (1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems:  neurological, musculoskeletal, special sense organs, respiratory (including speech organs) cardiovascular, reproductive, digestive, genitor-urinary, hemic and lymphatic; skin and endocrine; or (2) any mental or psychological disorder such as mental retardation, organic brain syndrome, emotional or mental illnesses and learning disabilities.

Plaintiff's trial testimony seemingly suggests three general categories of physical complaints/conditions which he argues would fall under a "physiological disorder or condition."  The first is that Plaintiff had pain or problems related to the surgical site. The second complaint relates to frequent urination and irritation and Plaintiff's third category is fatigue.

///

///

**Post Surgical Pain**

As to any pain or problems related to his prior surgical site, certainly, Defendants do not allege that Plaintiff had zero residual surgical effects post surgery. In fact, Plaintiff testifies that he probably was not "100 percent" when he returned. (Reporter's transcript dated July 19, 2010, 68:14-25.) (Attached to the Declaration of Monrae L. English as Exhibit "A")

Surgical procedures alone do not automatically generate the label of a "recognized disability under the ADA." As such, Plaintiff fails to testify at all about his actual physical condition other than to generally state that he had "pain" associated with certain activities. (Reporter's transcript dated July 19, 2010, 69:1-7.) (Attached to the Declaration of Monrae L. English as Exhibit "A") In fact, Plaintiff's testimony regarding his physical condition during this timeframe appears very standard and ordinary to the extent of a post-surgical perspective. It would difficult to imagine that every post-surgical condition would automatically allow an individual to claim a recognized disability under the ADA – and quite simply, Plaintiff provides no testimony that his post-surgical physical condition rises to the level of qualifying as a recognized disability under the ADA.

Plaintiff actually supports the fact that he experienced normal post-surgical healing in his testimony which indicates that "obviously, after my scar, after my scar tissue started to heal, I started to feel better. I didn't have, you know, that pain." (Reporter's transcript dated July 19, 2010, 89:-9-14) (Attached to the Declaration of Monrae L. English as Exhibit "A")

Simply put, general descriptions of post-surgical pain, without even a doctor's limitation cannot on their own, rise to the level of a recognized disability under the ADA

## Complaints of Frequent Urination and Irritation

Plaintiff testifies that it was not even until around the early or middle of February when he started to have problems. Reporter's transcript dated July 19, 2010, 81:-11-12; July 20, 2010 52: 13-16) (Attached to the Declaration of Monrae L. English as Exhibit "A") Plaintiff simply describes these problems in a general sense (urination because more frequent and a sense of urgency).

Once again, Plaintiff did not provide a single thread of testimony as to any medical condition or impairment (only a description of his complaint) and failed to provide any evidence other than to generally state that he had "problems." ( Reporter's transcript dated July 20, 2010, 55:8-20) (Attached to the Declaration of Monrae L. English as Exhibit "B")

Plaintiff's complaints of frequent urination with irritation (interestingly with testimony on point as to the work hours only and which are similar to a bladder infection) are not enough to rise to the level of a recognized disability under the ADA. From a public policy standpoint, any other conclusion would be incomprehensible.

## Complaints of Fatigue

Plaintiff's testimony as to his fatigue is equally void. Plaintiff states that he tired easily. He would do really well in the morning and by the afternoon he was really tired. He further clarified that that in hindsight he knew by the middle of February 2007 (a month after returning to work) that he would not be able to go six days a week –let alone seven days a week. Plaintiff then opines that he probably really should have been working **five days a week**. (Reporter's transcript dated July 19, 2010, 69:24-25 through 70:1-10.) (Attached to the Declaration of Monrae L. English as Exhibit "A") Plaintiff further confirmed that after a month of working the extremely busy season (full-

time hours, notably). Plaintiff then opines that he probably really should have been working five days a week. (Reporter's transcript dated July 19, 2010, 72:20-22.) (Attached to the Declaration of Monrae L. English as Exhibit "A")

In conclusion, it should be noted that Plaintiff failed to offer any expert medical testimony as to any physical condition or impairment during the pertinent time frame of January 15, 2007 and March 16, 2007. In fact, to the contrary, Plaintiff testified that his own doctor did NOT give him any restrictions and simply told him to take it easy and don't do anything too strenuous." (Reporter's transcript dated July 20, 2010, 62:19-23) (Attached to the Declaration of Monrae L. English as Exhibit "B")

### 2. Plaintiff's Physical Condition Did Not Substantially Limit One or More Major Life Activities

As the term is used in the ADA, "disability" means: physical or mental impairment that substantially limits one or more major life activities of such individual, a record of such impairment, or being regarded as having such an impairment. "Major life activities" include, but are not limited to, caring for oneself, performing manual tasks, walking, sleeping, seeing, hearing, speaking, breathing, learning, engaging in sexual relations, reproducing, interacting with others, and working.

A limitation is substantial is the "disabled" person is unable to perform the activity or is significantly restricted in doing so. Factors to consider in deciding whether a major life activity is substantially limited include: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact of the impairment. In fact, when the major life activity under consideration is the ability to walk or stand, the impairment of that ability must,

either permanently or over a lengthy period, prevent or substantially restrict the plaintiff from doing activities that are of central important to most people's daily lives either independently or when viewed together. (See Jury Instruction #17). (Declaration of Monrae L. English, Exhibit 'C').

In the present case, Defendant disputes the contention that Plaintiff even had a disability recognized under the ADA to begin with; however, even moving beyond this point, a simple analysis of the factors used to consider whether a major life activity is substantially limited makes it quite clear that Plaintiff's physical restrictions, if any, were not substantial at all.

An important starting point is Plaintiff's own testimony explaining that he felt he needed to work a five day work week *instead* of a six-day work week. But what perhaps is most telling is what Plaintiff *does not request*. Plaintiff does not request any reduced hours from full time to part time, he does not request that he allocate his work day inside at a desk rather than outside. He does not request additional breaks or rest periods (arguably he could have easily taken advantage of one of the motor home bed areas); he does not request a parking space closer to the work area; he does not request any special transportation around the lot; he does not even request that his five-day work week be broken up to include a day off in between work days; Plaintiff doesn't request to work from home part time; Plaintiff does not request that any workplace stations be moved closer to the restroom.

The obvious and most reasonable inference from the lack of these requests is that Plaintiff was not suffering any substantial limitations. Indeed, Plaintiff has offered no evidence that he was substantially limited in any way.

///

## Nature and Severity

Plaintiff provides no testimony to the effect that his pain/urination difficulties/fatigue were severe, or for that fact, anything other than a nuisance. Specifically, Plaintiff never uses a single adjective other than the words "pain" "problem" or "it hurt." Plaintiff's complaints were not severe.

## Duration or Expected Duration

Plaintiff concedes that any post-surgical problems resolved bit by bit, but what is more important is that there simply is no testimony related to any temporal aspect of Plaintiff's complaints. Other than complaints related to the work hours, Plaintiff only states that he was good in the morning and became fatigued in the afternoon. As to frequent urination, Plaintiff's testimony is that he had to urinate every two hours. (Reporter's transcript dated July 20, 2010, 52:2-4.) (Attached to the Declaration of Monrae L. English as Exhibit "B") Lastly, Plaintiff seemingly only had pain when it came to excessive walking, standing or climbing --there is no testimony or evidence that there was ongoing substantial pain other anything else other than the nuisance and irritation of having to go the bathroom every two hours. The burden is on Plaintiff to show this duration and he simply failed to do so.

## The Permanent Or Long Term Impact Of The Impairment

Once, again, Defendant disagrees that there is any substantial impairment, however, Plaintiff's testimony is that the post-surgical pain resolved. There is very little in terms of testimony as to Plaintiff's general fatigue and in fact, Plaintiff fails to testify that his request for the five day work schedule was not successful in eliminating his fatigue symptoms (after all it was his idea to work 5 days instead of 6).

Lastly, it is important to point out that the word "cancer" does not automatically mandate an ADA label and each individual must meet the criteria under the ADA.

## II. CONCLUSION

Plaintiff's failure to admit any medical testimony into evidence, along with his failure to provide any testimony that any physical condition substantially limited one of his major life activities precludes him from gaining status under the ADA and therefore, Defendant respectfully requests that the court grant a Judgment as a Matter of Law under FRCP 50(b).

Dated: August 19, 2010　　　　　　　　　　**Wild, Carter & Tipton**

By: _____

Monrae L. English

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF FRESNO

I am employed in the County of Fresno, State of California. I am over the age of 18 and not a party to the within action; my business address is: 246 West Shaw Avenue, Fresno, California 93704.

On **August 19, 2010,** I served the document(s) described as:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION AS A MATTER OF LAW**

on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope at: Fresno, California, addressed as follows:

**MICHAEL P. BALABAN**
**LAW OFFICES OF MICHAEL P. BALABAN**
**10726 Del Rudini Street**
**Las Vegas, Nevada 89141**

__X__      (BY MAIL) I am readily familiar with this business's practice for collection and processing of correspondence for mailing, and that correspondence, with postage thereon fully prepaid, will be deposited with the U. S. Postal Service on the date hereinabove in the ordinary course of business, at Fresno, California.

_____      (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the addressee(s).

_____      (BY OVERNIGHT COURIER) I caused the above-referenced envelope(s) to be delivered to an overnight courier service for delivery to the addressee(s).

_____      (BY FACSIMILE) I caused the above-referenced document(s) to be faxed to the offices of the addressee(s).

Executed on **August 19, 2010**, at Fresno, California.

_____      (STATE) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

__X__      (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

TRACY KAMIMOTO