**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

CARMEN MELONE, )
                                     Plaintiff, )    Case No. 2:08-cv-00868-GWF
)
vs. )
)
PAUL EVERT'S RV COUNTRY, INC., )
                                   Defendant. )
_____ )

       This matter is before the Court on Plaintiff's Motion for Attorney's Fees (#113), filed on January 23, 2012; Defendant's Opposition to Plaintiff's Motion for Attorney's Fees (#114), filed on February 6, 2012; and Plaintiff's Reply to Defendant's Opposition to Motion for Attorney's Fees (#116), filed on February 16, 2012. The Court conducted a hearing in this matter on February 29, 2012.

**BACKGROUND**

       Plaintiff Carmen Melone, as the prevailing party in this action, moves for an award of $107,375.00 in attorney's fees. Plaintiff's motion is predicated on 429.5 hours expended by Plaintiff's counsel at the hourly rate of $250.[1] Defendant does not dispute the reasonableness of Plaintiff's counsel's hourly rate of $250 for professional legal services, but argues that some of the services should be compensated at a lower paralegal hourly rate. Defendant also argues that the hours claimed by Plaintiff's counsel are excessive and should be substantially reduced. Defendant

---

[1] Although Plaintiff states in his motion that he is requesting $107,175.00, the 429.5 hours billed multiplied by $250 equals $107,375.00. *See Motion (#113), Exhibit A.* This amount does not include attorney's fees which have already been awarded by the Court of Appeals on Plaintiff's successful appeal.

argues that the award of attorney's fees should not exceed $68,960.00. The facts and legal issues in this case are summarized in the Court's Memorandum and Decision (#108), filed on December 27, 2011. The following background summarizes the significant activities during the litigation which bear on Plaintiff's motion for attorney's fees:

Plaintiff Carmen Melone commenced this action against Defendant Paul Evert's RV Country, Inc. on July 3, 2008. The parties participated in a Early Neutral Evaluation ("ENE") conference pursuant to Local Rule 16-6 before Magistrate Judge Leavitt on May 7, 2009. Although a follow-up "ENE" conference was scheduled, the parties stipulated to vacate that conference on July 9, 2009. The parties engaged in written discovery through interrogatories and requests for production of documents. The Defendant deposed Plaintiff Carmen Melone and Plaintiff deposed Defendant's former sales manager Tom Schmid, and Defendant's general manager, Curt Curtis. There were no contested discovery motions filed by either side.

Defendant filed a ten page motion for summary judgment on August 7, 2009 in which it argued that Plaintiff did not have a disability within the meaning of the ADA. *Motion for Summary Judgment (#28)*. In support of its motion, Defendant relied on the Plaintiff's deposition testimony regarding the nature and extent of his alleged impairments. Plaintiff's counsel filed a twelve page response to the motion on August 25, 2009 in which he argued that Mr. Melone had a disability within the meaning of the ADA. Plaintiff's counsel also argued that Mr. Melone was disabled within the meaning of the ADA Amendment Act of 2008 ("ADAAA"). *Response to Motion for Summary Judgment (#30)*. Plaintiff also filed an eleven page statement of genuine issues, a four page declaration by Plaintiff Carmen Melone, and attached copies of Plaintiff's medical records and Defendant's responses to interrogatories in support of his opposition. *Id.* The Defendant filed an eight page reply in which it argued that the ADAAA did not apply retroactively to Plaintiff's claim which accrued before the effective date of that enactment. *Reply (#31)*. The Court heard oral argument on the motion for summary judgment on September 10, 2009 and thereafter denied the motion on February 25, 2010. The Court held that the ADAAA did not apply to this case, but that Plaintiff had met his burden of showing a *prima facie* case for disability discrimination under the ADA. *Order (#36)*.

The parties thereafter participated in a settlement conference before Judge Leavitt on May 19, 2010 which was unsuccessful. *Minute Order (#41)*. Jury trial was thereafter set for July 19, 2010. Prior to trial, Plaintiff submitted a three page list of jury voir dire questions, (#47), a fourteen page trial brief (#49), a nine page list of exhibits (#56) and a two page witness list (#57). Most of Plaintiff's trial exhibits were stipulated into evidence pursuant to the joint pre-trial memorandum.[2] Defendant filed three motions in limine shortly before trial. The Court denied those motions prior to any written response by Plaintiff. *Order (#59)*. The case was tried to the jury between July 19 and July 22, 2010 on the issues of liability and Plaintiff's claim for emotional distress damages. The jury returned a verdict in favor of the Plaintiff and awarded him emotional distress damages in the amount of $40,000.01. *Jury Verdict (#64)*. Following the jury's verdict the Court scheduled a bench trial on Plaintiff's claim for back pay for September 1, 2010. *Minute Order (#69)*.

Defendant filed a motion for judgment as a matter of law on August 19, 2010, which included a ten page memorandum of law. *Motion (#74)*. Plaintiff filed an eighteen page response to Defendant's motion on September 5, 2010. *Response (#80)*. Defendant thereafter filed an eleven page reply brief in support of its motion for judgment as a matter of law. *Reply (#83)*. The Court denied Defendant's motion to stay the bench trial pending a ruling on the motion for judgment as a matter of law. *Order (#77)*. The September 1, 2010 bench trial took approximately one hour and forty-five minutes. *Transcript of Proceedings (#86)*. Plaintiff filed a six page post-trial brief. *Opening Brief (#84)*. Defendant filed a seven page response, *Response (#87)*, and Plaintiff filed a five page reply. *Reply (#88)*.

The Court conducted a one hour hearing on Defendant's motion for judgment as a matter of law on October 7, 2010. *Minutes (#89)*. On November 1, 2010, the Court granted the motion on the ground that Plaintiff did not present sufficient evidence of disability at trial to support the jury

---

[2] Plaintiff's counsel caused unnecessary confusion by numbering his trial exhibits differently from the list of Plaintiff's exhibits in the joint pre-trial memorandum. The Court therefore required him to file a document reconciling Plaintiff's trial exhibits with the exhibits listed in the joint pretrial memorandum.

3

verdict in his favor. *Order (#90).* Based on this decision, the Court did not determine the amount of back pay that Plaintiff would otherwise have been entitled to recover. Plaintiff appealed the order granting judgment as a matter of law. On October 28, 2011, the Ninth Circuit reversed and remanded the case for entry of judgment in favor of the Plaintiff "in accordance with the jury verdict and the district court's rulings on back pay and front pay." *Memorandum of USCA (#103)*, pg. 3. The Ninth Circuit subsequently granted Plaintiff's unopposed motion for attorney's fees incurred in his successful appeal. *Order of USCA (#109)*, filed December 22, 2011.

This Court conducted a status hearing on December 8, 2011 and thereafter filed its *Memorandum of Decision, Findings of Fact and Conclusions of Law (#108)* on December 27, 2011 in which it awarded Plaintiff $33,374.60 in back pay. Judgment for Plaintiff was entered on January 10, 2012 in the amount of $73,374.61. *Judgment (#111).*

## DISCUSSION

The ADA provides that the district court, in its discretion, may allow the prevailing party reasonable attorney's fees, including litigation expenses and costs. 42 U.S.C. §12205. The court should award reasonable attorney's fees and costs to the prevailing plaintiff unless special circumstances would render such an award unjust. *Jankey v. Poop Deck*, 537 F.3d 1122, 1130 (9th Cir. 2008) and *Barrios v. California Interscholastic Federation*, 277 F.3d 1128, 1134 (9th Cir. 2002), quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.C. 1933 (1983). In making an award of attorney's fees, the district court must strike a balance between granting sufficient fees to attract qualified counsel to handle such cases, while avoiding a windfall to counsel. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). "The way to do so is to compensate counsel at the prevailing rate in the community for similar work; no more, no less." *Id.*

Federal courts generally follow a two step process in determining a reasonable attorney's fee award. First, the court must calculate the "lodestar figure" by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate. *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th 2000). Second, the Court must decide whether to enhance or reduce the lodestar figure based on an evaluation of the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) that are not already subsumed in the initial loadstar

calculation.³ *Id.*

As the court in *Wheeler v. Coss*, 2010 WL 2628667, *2 (D.Nev. 2010) notes, several of the *Kerr* factors are subsumed in the lodestar calculation. The Ninth Circuit has also held that the sixth factor, whether the fee is fixed or contingent, may not be considered in the lodestar calculation. *See Davis v. City & County of San Francisco,* 976 F.2d 1536, 1549 (9th Cir.1992), *vacated in part on other grounds,* 984 F.2d 345 (9th Cir.1993). There is also a strong presumption that the lodestar figure represents a reasonable fee. *Jordan v. Multnomah County,* 815 F.2d 1258, 1262 (9th Cir.1987). However, upon considering the relevant *Kerr* factors that may bear on reasonableness, the court may adjust the award from the lodestar figure. *Ballen v. City of Redmond,* 466 F.3d 736, 746 (9th Cir.2006). Only in rare instances, however, should the lodestar figure be adjusted on the basis of these considerations. *Harris v. Marhoefer,* 24 F.3d 16, 18 (9th Cir.1994).

### 1. Reasonableness of Plaintiff's Counsel's Hourly Rate:

A reasonable hourly rate "'should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity.'" *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007). The reasonable hourly rate should reflect the prevailing market rate in the forum. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). "'When a fee applicant fails to meet its burden of establishing the reasonableness of the requested rates ... the court may exercise its discretion to determine reasonable hourly rates based on its experience and knowledge of prevailing rates in the community.'" *Wheeler v. Coss*, 2011 WL 2628667, *3 (D.Nev. 2010),

---

³The *Kerr* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. These factors are incorporated in this District's Local Rules of Civil Practice, LR54-16(b).

quoting *Bademyan v. Receivable Mgmt. Servs. Corp.*, 209 U.S. Dist. LEXIS, at *15, 2009 WL 605789, at *5 (C.D.Cal. March 9, 2009).

Plaintiff's counsel states in his affidavit that he has been licensed to practice law in the State of California since 1994 and in Nevada since 2005. He was admitted to practice in this District Court in 2008. He also states that he has handled Title VII employment discrimination cases and ADA and ADEA cases for more than 13 years and is well versed in the law under those statutes. Plaintiff's counsel states that because most employee-plaintiffs have limited financial resources, he is forced to take their cases on a contingency basis, but that he would bill such cases at his regularly hourly rate of $250 per hour if the clients could afford to pay fees. Plaintiff's counsel further states that for attorneys with his experience and expertise, $250 per hour is probably on the low side of the customary hourly rate in the Las Vegas Market. Plaintiff has not, however, submitted any independent evidence, such as affidavits from other attorneys or fee awards in other cases, to establish the prevailing hourly rate in this community.

Defendant has not challenged the reasonableness of Plaintiff's counsel's $250 hourly rate, although it argues that certain services should be compensated at a lower hourly rate for paralegal services. Defendant argues that this rate should be no more than $90 per hour. In support of this rate, Defendant relies on *Wheeler*, 2010 WL 2628667, at *7, which held that an hourly rate of $90 or $100 is reasonable for paralegals in the District of Nevada.

The Court finds, based on its knowledge and experience regarding such matters, that Plaintiff's counsel's hourly rate of $250 for professional legal services is reasonable and is within the prevailing rate within this community. Defendant's argument that some of the hours should be compensated at a lower paralegal hourly rate is addressed in the next section.

**2. Reasonableness of Time Expended by Plaintiff's Counsel:**

The number of hours to be compensated is calculated by considering whether in light of the circumstances, the time could reasonably have been billed to a private client. *Moreno v. City of Sacramento*, 534 F.3d at 1111. When the district court makes its award, it must explain how it came up with the amount. The explanation need not be elaborate, but it must be comprehensible. Where the difference between the amount requested and the court's award is relatively small, a

somewhat cursory explanation will suffice. *Moreno* states that "the district court can impose a small reduction, no greater than 10 percent— a 'haircut'— based on its exercise of discretion and without a more specific explanation." *Id.* at 1112. Where the disparity between the fees requested and those awarded is greater, however, the court must provide a more specific articulation for its reductions. *Id.*

The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence in support of the hours worked. *Welch v. Metropolitan Life Insurance Co.*, 480 F.3d 942, 948 (9th Cir. 2006), citing *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). Defendant argues that Plaintiff's counsel has failed to satisfy this burden because his "Itemization of Tasks Performed/Hours Spent on Case," *Motion (#113), Exhibit A*, consists of many "block billing" entries. "'Block billing' is 'the time keeping method by which each lawyer or legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" *Welch* at 945, n. 2. *Welch* stated that "[i]t was reasonable for the district court to conclude that [plaintiff] failed to carry her burden, because block billing makes it more difficult to determine how much time was spent on particular activities. *See, e.g., Role Models Am., Inc. v. Brownlee,* 353 F.3d 962, 971 (D.C.Cir.2004) (reducing requested hours because counsel's practice of block billing 'lump[ed] together multiple tasks, making it impossible to evaluate their reasonableness'); *see also Hensley,* 461 U.S. at 437, 103 S.Ct. 1933 (holding that applicant should 'maintain billing time records in a manner that will enable a reviewing court to identify distinct claims'); *Fischer v. SJB-P.D. Inc.,* 214 F.3d 1115, 1121 (9th Cir.2000) (holding that a district court may reduce hours to offset 'poorly documented' billing)." *Welch,* at 948.

The entries in Plaintiff's counsel's Itemization do not necessarily fall within *Welch*'s definition of "block billing," because they generally describe time spent in performing particular tasks such as, for example, drafting the complaint or preparing discovery requests and responses. The entries, however, do not provide adequate detail about the particular tasks so that a determination of reasonableness can be made from the entries themselves. The Court can and has evaluated the reasonableness of many of the billing entries based on the work product produced, *e.g.*, the complaint or Plaintiff's responses to the motions filed by the Defendant. The Court

7

requested that Plaintiff's counsel submit any contemporaneous billing records he maintained during the course of the litigation. *Minute Order (#118)*. In response, Plaintiff submitted nine pages of handwritten "billing notes." *See Submission of Billing Notes (#119)*. Although Plaintiff's counsel represented that these billing notes were made at or about the time the services were provided, the appearance of the document does not necessarily support this representation. In any event, the "billing notes" contain even less detail than the Itemization.

*Welch v. Metropolitan Life Insurance Co.* indicated that it was not necessarily unreasonable for the district court to impose a 20% reduction on hours that were "block-billed," based on a California State Bar Committee report which concluded that block billing "'may increase time by 10% to 30%.'" The Ninth Circuit held that it was error, however, to apply this reduction to all of the hours billed-since only approximately one-half of the hours were "block-billed." The court also stated that the district court, on remand, should "'explain how or why ... the reduction fairly balance[s]' those hours that were actually billed in block format." *Welch*, 480 F.3d at 948. This Court has not been provided with the study referenced in *Welch* and has no information regarding the basis for that study's estimate of the inflationary effect of block billing. The Court is not persuaded, therefore, that an across-the-broad 20 percent reduction would be warranted based on "block-billing." Furthermore, as stated above, Plaintiff's Itemization does not involve the degree of "block-billing" that was disapproved by the court in *Welch*.

*Welch*, however, did approve an across-the-board 20 percent reduction for time billed in quarter-hour increments for phone calls, emails, or the preparation and review of brief letters or documents. The court noted that the time actually expended in these items was probably a fraction of that billed. *Id.* at 948-9. Here, Plaintiff's counsel's Itemization contains a total of 13.6 hours in items that were billed at .3 or .4 hours. The brief descriptions in these entries do not provide adequate information to justify the time billed. The Court will therefore reduce these hours by 20 percent for a reduction of 2.72 hours.

**Time Billed in Researching and Preparing Complaint:** On June 28, 2008, Plaintiff's counsel billed 4.3 hours to "review documents and misc. research prior to drafting complaint." On July 1, 2, and 3, 2008, he billed an additional 10 hours to draft the complaint for a total of 14.3

hours. Defendant argues that it reasonably should have taken no more than three (3) hours to draft the complaint. Although the complaint is only four pages long, it is fairly fact specific and free from significant standard boilerplate. In this post-*Iqbal*[4] era, a plaintiff's attorney must ensure that the complaint contains sufficient factual detail to withstand a motion to dismiss under Rule 12(b)(6). It can also take more time and effort to draft a concise and accurate document than it does to draft a longer, but less well organized pleading. In *Wheeler*, 2010 WL 2628667, at *4, the court found that 16.8 hours billed by plaintiff's counsel for drafting a 13 page complaint was reasonable and necessary. This Court does not believe it should have taken 14.3 hours to research and draft a four page complaint involving only one cause of action. The Court will reduce the time billed for researching and drafting the complaint by 20 percent, for a 2.9 hour reduction.

***Other Reductions*:** Defendant argues that Plaintiff has billed 85 hours for administrative/ paralegal work which should be compensated at a lower $90 hourly rate. Plaintiff's counsel is a sole practitioner who performed all of the services set forth in the Itemization. In larger law firms, certain legal work may be performed by lower level associate attorneys, law clerks or paralegals, whose work is supervised, reviewed or revised by more senior level attorneys. As the Ninth Circuit noted in *Moreno v. City of Sacramento*, 534 F.3d at 1114, n. 2, it is debatable whether this billing model results in more or less attorney's fees being charged as compared to cases in which a single attorney performs all or most of the legal work. As the court in *Wheeler* noted, one can argue back and forth whether time spent in document review and organizing may reasonably be performed by the attorney or should be delegated to a paralegal.

Instead of imposing an hourly rate reduction as requested by Defendant, the Court will disallow certain items billed by Plaintiff's counsel that do not involve professional legal services, that appear unnecessary and unreasonable, or which result from Plaintiff's counsel's carelessness. The Court will impose a ten (10) percent reduction on the remaining hours billed by Plaintiff's counsel to account for the lack of sufficient detail in the Itemization and the likelihood of excessive billing overall. This percentage reduction is within the threshold authorized by *Moreno*.

---

[4]*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009)

The billing items which the Court disallows are as follows:

(1) Plaintiff's counsel billed 2.6 hours on July 8, 2008 to "Bring summons to attorney service to serve on Defendant." This entry indicates that Plaintiff's counsel charged his professional hourly rate of $250 for delivering the summons and complaint to the process server. Attorneys do not normally bill their clients for in-house clerical or administrative work. An attorney who chooses to personally perform these completely non-lawyer functions cannot expect to be separately paid for them, let alone at his professional hourly rate. The Court therefore disallows this billing.

(2) Plaintiff's counsel billed 3.8 hours on July 19, 2010 to "prepare for second day of trial including preparing for filing a corresponding exhibits from exhibit list to pre-trial order." The need for a corrected exhibit list was due to Plaintiff's counsel's negligence in marking his trial exhibits with different numbers than the admitted exhibits listed in the joint pretrial order. Plaintiff's counsel should not be compensated for added work caused by his own careless numbering of the trial exhibits. The Court therefore deducts 3.0 hours from this entry.

(3) Finally, the Court will disallow the 15.1 hours that Plaintiff's counsel billed for reviewing and preparing summaries of the three depositions taken in this case. Depositions summaries may serve a useful purpose where an attorney other than trial counsel has taken the depositions or where the depositions are numerous and voluminous. The Court finds no useful basis for them in this case. The time spent in reviewing and preparing deposition summaries appears to simply be bill padding.

***Time Expended in Opposing Defendant's Motion for Judgment as a Matter of Law:*** Defendant argues that Plaintiff should not be allowed to recover 31.7 hours billed by his attorney in opposing Defendant's motion for judgment as a matter of law. Defendant argues that Plaintiff was not the "prevailing party" in regard to this motion, notwithstanding that the order granting the motion was reversed on appeal by the Ninth Circuit. In support of this argument, Defendant relies on the unpublished decision in *Butler v. NCAA*, 2 Fed.Appx.729, 731, 2001 WL 50535 (C.A. 9 (Wash) 2001). That case, together with the precedent cited therein, does not support Defendant's argument.

1  The plaintiff in *Butler* alleged that the NCAA's academic eligibility criteria for scholarship
2  athletes violated the ADA. The plaintiff obtained a temporary restraining order and then a
3  preliminary injunction which allowed him to compete as a scholarship athlete while the case was
4  pending. Prior to trial, the NCAA entered into a consent decree with the United States under which
5  it agreed to abide by the ADA. The plaintiff then dismissed his action against the NCAA. In
6  holding that plaintiff was entitled to an award of attorney's fees as the "prevailing party," the court
7  stated:

> The "'touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties.'" *Farrar,* 506 U.S. at 111 (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792-93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). It is not essential for a party to have "obtained a favorable 'final judgment following a full trial on the merits'" in order to be a "prevailing party." *Hanrahan v. Hampton,* 446 U.S. 754, 756-57, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (per curiam) (quoting H.R. Rep. No. 94-1158, at 7 (1976)). Rather, a party prevails if the party succeeds 'on any significant issue in litigation which achieves some of the benefit [it] sought in bringing suit.'" *LSO, Ltd. v. Stroh,* 205 F.3d 1146, 1160 (9th Cir.2000) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)) (alteration in original). If, however, the court awards a party interlocutory relief solely to maintain the status quo, then that party cannot be said to "prevail." *See id.* at 1160-61.

17  *Butler*, 2 Fed.Appx. at 731.
18  Defendant's victory on the motion for judgment as a matter of law was ephemeral. The
19  Ninth Circuit reversed that order and reinstated the jury's verdict. The order granting the motion,
20  therefore, did not materially alter the legal relationship of the parties and Defendant did not achieve
21  any benefit from that erroneous decision. It would be unfair to deprive Plaintiff's counsel of
22  reasonable attorney's fees he earned in opposing a motion that was ultimately resolved in favor of
23  his client.

## CONCLUSION

25  Based on the foregoing, the Court has made specific reductions in the hours billed by
26  Plaintiff in the amount of 20.7 hours. The Court has also reduced 13.6 hours by 20 percent, for an
27  additional deduction of 2.72 hours. The Court will reduce 395.2 hours billed by Plaintiff's by 10
28  percent in accordance with *Moreno v. City of Sacramento*. This results in a further deduction of

39.5 hours. The total number of hours deducted from Plaintiff's Itemization is 62.92 hours which results in a lodestar figure of $91,645.00 (366.58 hours times $250). The Court concludes that this is a reasonable attorney's fee in light of the legal services rendered by Plaintiff's counsel and the result obtained. The Court, therefore, will not adjust the lodestar figure upward or downward in light of the *Kerr* factors. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Attorney's Fees (#113) is **granted** in the total amount of $91,645.00.

DATED this 3rd day of April, 2012.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge